IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-00427-PAB-NRN

REED K. MCDONALD,

        Plaintiff,

v.

CITIBANK N.A., and
SHANA KLOEK, in her individual and professional capacity as Clerk of Court for
Arapahoe County, Colorado,

        Defendants.

---

### ORDER

---

This matter is before the Court on Plaintiff's Response and Objections to the
Court's Order Dated 8-24-2021 [Docket No. 95], which the Court construes as a motion
for reconsideration. Plaintiff seeks reconsideration of the Court's order, Docket No. 93,
accepting Magistrate Judge N. Reid Neureiter's recommendations, Docket Nos. 86, 87,
to grant defendants' motions to dismiss, Docket Nos. 30, 39, and to deny plaintiff's
remaining motions as moot.

## I. BACKGROUND

The Court draws the relevant facts from the magistrate judge's recommendation.
This dispute arises out of the foreclosure and sale of plaintiff's house and his ultimate
eviction through defendant Citibank N.A.'s ("Citibank") forcible entry and detainer
("FED") lawsuit. Docket No. 86 at 2. Plaintiff asserts claims under 42 U.S.C. §§ 1983,
1985, and 1986 for violations of his constitutional rights. *See generally* Docket No. 1.

In 2012, Citibank brought a foreclosure action against plaintiff in Arapahoe

County District Court ("Arapahoe District Court").  Docket No. 86 at 2.  The foreclosure action resulted in the sale of plaintiff's property.  *Id.*  Because plaintiff continued to reside at the property, in 2014, Citibank brought FED action in Arapahoe District Court against plaintiff.  *Id.*  That action eventually resulted in judgment for possession in favor of Citibank and against plaintiff.  *Id.*  Plaintiff appealed the FED judgment, and the Colorado Court of Appeals affirmed the Arapahoe District Court's judgment.  *Id.* at 3 (citing *Citibank, N.A. v. McDonald*, 2015 WL 6121749, at *1 (Colo. App. Oct. 15, 2015)).

One year later, Citibank sought and was granted a writ of restitution.  *Id.*  The writ expired, and Citibank moved for the re-issuance of the writ on January 5, 2017.  *Id.* Defendant Shana Kloek ("Kloek"), the Arapahoe County Clerk of Court, reissued the writ, and plaintiff was evicted soon after.  *Id.*  In this lawsuit, plaintiff alleges that Citibank was required to confer with him before moving to reissue the writ and that Kloek had no authority to reissue the writ.  *Id.*[1]

The magistrate judge recommended dismissing all claims against Kloek in her official capacity under the Eleventh Amendment and dismissing all claims against Kloek in her individual capacity as barred by judicial immunity.  *Id.* at 7–9.  The magistrate judge also found that the statute of limitations had run on plaintiff's claims, that plaintiff's

---

[1] According to the magistrate judge, plaintiff has filed numerous related lawsuits, including three appeals with the Colorado Court of Appeals (Case Nos. 14CA759, 14CA1359, and 16CA652), two petitions for certiorari to the Colorado Supreme Court (Case Nos. 14SC763 and 17SC465), eight motions under Colorado Appellate Rule 21 for original proceedings before the Colorado Supreme Court (Case Nos. 15SA305, 15SA307, 15SA313, 16SA130, 17SA11, 17SA79, 17SA95, 17SA138, and 19SA195), six lawsuits in this Court (Case Nos. 12-cv-02681-LTB, 12-cv-02749-MSK-MEH, 15-cv-00027-MSK-MEH, 15-cv-02731-LTB-GPG, 16-cv-02698-RM, and 17-cv-01701-CMA-MJW), and five appeals to the United States Court of Appeals for the Tenth Circuit (Case Nos. 12-1488, 15-1168, 15-1445, 16-1056, and 18-1070).  *Id.* at 2 n.1.

constitutional claims against Citibank should be dismissed because Citibank is not a state actor, and that the *Rooker-Feldman* doctrine also bars plaintiff's suit. *Id.* at 9–15. In his second recommendation, the magistrate judge recommends that plaintiff's additional motions be denied as moot. Docket No. 87 at 1–2.

The magistrate judge's recommendations, which were served on July 22, 2021 and July 23, 2021, respectively, state that objections must be filed within fourteen days after service on the parties. *See* Docket No. 86 at 16; Docket No. 87 at 2–3; 28 U.S.C. § 636(b)(1)(C). On August 5, 2021, plaintiff filed a timely objection, but the objection exceeded the page limitation by nine pages. *See* Docket No. 89; Practice Standards (Civil cases), Chief Judge Philip A. Brimmer § III.A ("All . . . objections (including objections to the recommendations or orders of United States Magistrate Judges) . . . shall not exceed fifteen pages."). On August 6, 2021, the Court struck the objection for failure to comply with the Court's Practice Standards. *See* Docket No. 90 (striking objection because it exceeded page limitation). The Court permitted plaintiff to file a complying objection on or before August 13, 2021. *Id.* However, plaintiff did not file another objection. As a result, on August 24, 2021, the Court accepted magistrate judge's recommendations, granted defendants' motions to dismiss, and closed the case. Docket No. 93 at 3. The Court entered final judgment the same day. Docket No. 94. Plaintiff seeks reconsideration of the Court's order, accepting the recommendations. Docket No. 95.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See Hatfield v. Bd. of Cnty. Comm'rs*, 52 F.3d 858, 861 (10th Cir.

1995).  Instead, motions for reconsideration fall within a court's plenary power to revisit and amend interlocutory orders as justice requires.  *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962).  The Court is to consider whether new evidence or legal authority has emerged or whether the prior ruling was clearly in error.  Motions to reconsider are generally an inappropriate vehicle to advance "new arguments, or supporting facts which were available at the time of the original motion."  *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).  Under the clearly erroneous standard, "the reviewing court [must] affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

## III.  ANALYSIS

After the Court closed the case and entered final judgment, plaintiff filed a response to the Court's order accepting the magistrate judge's recommendations. Docket No. 95.  Plaintiff raises three issues in his response.  First, plaintiff claims that the Court "no longer obeys the mail service 'Three Day Rule.'"  *Id.* at 1.  The three-day rule that plaintiff appears to refer to is found in Federal Rule of Civil Procedure 6(d). The rule adds three days to relevant deadlines when service is made by mail, which it was in this case.  The Court afforded plaintiff from August 6, 2021, when the Court struck plaintiff's overlong objections, until August 24, 2021, when the Court closed the case.  The Court, therefore, followed the three-day rule.  Second, plaintiff claims that the

Clerk's Office no longer accepts *pro se* parties' filings by email.  Docket No. 95 at 1.

Plaintiff is mistaken.  In fact, plaintiff filed his overlong objections, Docket No. 89, by

email.  Third, plaintiff states that he never received the Court's order striking his

objections.  Docket No. 95 at 2.  In light of this representation, the Court will consider

plaintiff's objections as if timely filed.

The Court must "determine *de novo* any part of the magistrate judge's disposition

that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  An objection is "proper" if

it is both timely and specific.  *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059

(10th Cir. 1996).  A specific objection "enables the district judge to focus attention on

those issues – factual and legal – that are at the heart of the parties' dispute."  *Id.*  A

general objection that does not put the District Court on notice of the basis for the

objection will not preserve the objection for *de novo* review.  *Id.*

In the absence of an objection, the district court may review a magistrate judge's

recommendation under any standard it deems appropriate.  *See Summers v. Utah*, 927

F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It

does not appear that Congress intended to require district court review of a magistrate's

factual or legal conclusions, under a de novo or any other standard, when neither party

objects to those findings.").  The Court therefore reviews the non-objected to portions of

the recommendation to confirm that there is "no clear error on the face of the record."

Fed. R. Civ. P. 72(b), Advisory Committee Notes.  This standard of review is something

less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P.

72(a), which in turn is less than a *de novo* review.  Fed. R. Civ. P. 72(b).

**A.  Claims Against Kloek**

The magistrate judge recommended dismissing plaintiff's official-capacity claims against Kloek as barred by the Eleventh Amendment.  Docket No. 86 at 7.  The magistrate judge also recommended dismissing plaintiff's individual-capacity claims against Kloek as barred by judicial immunity.  *Id.* at 8–9.  Plaintiff does not address Eleventh Amendment immunity explicitly, but rather objects that Kloek is a "county clerk of court, not a judge" and that Kloek "is not the state, but an employee of Arapahoe County, Colorado."  Docket No. 98 at 5, 7.

The Supreme Court has made clear that, "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."  *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 277 (1977).  The magistrate judge concluded that, because plaintiff's claims are against Kloek in her official capacity as Arapahoe County Clerk of Court, the Eleventh Amendment bars his claims, as "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," Docket No. 86 at 7 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)), and "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state."  *Id.* (quoting *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994)).

Although the Supreme Court "has repeatedly refused to extend [Eleventh Amendment] sovereign immunity to counties," *N. Ins. Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006); *accord Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (Eleventh Amendment immunity "does not extend to counties and

6

similar municipal corporations"), and "county officers sued for damages in their official capacity are generally not entitled to Eleventh Amendment immunity," *Couser v. Gay*, 959 F.3d 1018, 1023 (10th Cir. 2020), courts in this district have held that judicial districts are considered state courts under the Colorado Constitution and are therefore entitled to Eleventh Amendment immunity.  *See, e.g.*, *Silva v. US Bank, Nat'l Assoc.*, 294 F. Supp. 3d 1117, 1126 (D. Colo. 2018), *report and recommendation adopted sub nom. Silva v. US Bank, Nat'l Assoc. as Tr. under Pooling and Serv. Agreement dated as of February 1, 2007*, 2018 WL 10561514 (D. Colo. Mar. 19, 2018); *Fey v. Washington*, No. 16-cv-03103-WJM-MEH, 2017 WL 1344451, at *5 (D. Colo. Apr. 12, 2017).  On *de novo* review, the Court accepts the magistrate judge's recommendation and finds Kloek, an employee of a state court, immune from suit under the Eleventh Amendment.

Even if the Eleventh Amendment did not bar plaintiff's official-capacity claims against Kloek, the Court finds the doctrine of absolute judicial immunity bars all claims against her.  "It is well established in this circuit that a judge is absolutely immune from civil liability for judicial acts, unless committed in clear absence of all jurisdiction, and the same immunity continues even if 'flawed by the commission of grave procedural errors.'"  *Coleman v. Farnsworth*, 90 F. App'x 313, 316 (10th Cir. 2004) (unpublished) (citing *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000)).  As the magistrate judge noted, this immunity applies to "judicial officers where performance of a judicial act is involved or their duties have an integral relationship with the judicial process."  *Coleman*, 90 F. App'x at 317 (citing *Whitesel*, 222 F.3d at 867; *Lundahl v. Zimmer*, 296 F.3d 936, 939 (10th Cir. 2002)).  In order to determine the bounds of immunity afforded a clerk of court, the Tenth Circuit has explained that it is first

7

necessary to examine the immunity afforded judges.  *Id.* at 316.

Absolute judicial immunity applies to all claims, whether official-capacity or personal-capacity, that are based on judicial acts.  *See Mireles v. Waco*, 502 U.S. 9, 12 (1991) (holding that judges are immune from suit for all actions taken in their judicial capacity unless taken "in the complete absence of all jurisdiction"); *Dongon v. Banar*, 363 F. App'x 153, 155 (3d Cir. 2010) (unpublished) (holding absolute judicial immunity applies to all claims, whether official-capacity or personal-capacity, that are based on judicial acts); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) ("'Judicial immunity' is shorthand for the doctrine of absolute immunity that operates to protect judges and quasi-judicial officers alike from suit in both their official and individual capacities."); *DePiero v. City of Macedonia*, 180 F.3d 770, 783 (6th Cir. 1999) ("[j]udges are generally absolutely immune from civil suits for money damages, including § 1983 suits.").  "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction."  *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967).  Judicial immunity "applies even when the judge is accused of acting maliciously or corruptly," as judicial immunity acts for "the benefit of the public, whose interest it is that judges should be at liberty to exercise their functions with independence and without fear of consequence."  *Id.* at 554.  Judges are "absolutely immune regardless of their motive or good faith."  *Smith v. Losee*, 485 F.2d 334, 342 (10th Cir. 1973) (citing *Doe v. McMillan*, 412 U.S. 306, 319 (1973)).  Judicial immunity also extends to claims of violations of constitutional rights under § 1983.  *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

A judge will lose judicial immunity only for (1) "nonjudicial actions, i.e., actions not

taken in the judge's judicial capacity," or (2) judicial actions "taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11–12. "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362.

The Tenth Circuit has extended the same immunity to judicial officers where performance of a judicial act is involved or their duties have an integral relationship with the judicial process. *Coleman*, 90 F. App'x at 316 (citing *Whitesel*, 222 F.3d at 867; *Lundahl*, 296 F.3d at 939). Applying this standard, the Tenth Circuit has held that a court clerk enjoys absolute quasi-judicial immunity when the clerk performs a "judicial act," such as entry of a default judgment. *See Lundahl*, 296 F.3d at 939. The Tenth Circuit cautions, however, that while court clerks are generally entitled to immunity, "it is necessary to weigh the nature of the activity involved and the need for unfettered exercise of discretion against the individual interest in protection under § 1983." *Henriksen v. Bentley*, 644 F.2d 852, 855–56 (10th Cir. 1981). The doctrine of judicial immunity "ensures judges and judicial officers perform their duties vigorously and without fear of time-consuming, costly, 'vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official responsibilities.'" *Coleman*, 90 F. App'x at 317 (quoting *Smith*, 485 F.2d at 341).

The magistrate judge determined that he "ha[d] no trouble concluding that . . . Kloek, in reissuing the Writ of Restitution, was performing a 'judicial act' that bestows the protections of absolute immunity" because she was "authorized to enter the writ by

Colorado law." Docket No. 86 at 8–9 (citing Colo. Rev. Stat. § 13-6-212 (authorizing the county court clerk to "[i]ssue . . . writs of restitution upon written or oral order of a judge")). Here, an Arapahoe District Court judge entered an order of restitution, and Kloek "was merely reissuing the writ." *Id.* at 9. The magistrate judge found that this was "intrinsically associated with a judicial proceeding." *Id.* (citing *Valdez v. City & Cnty. of Denver*, 878 F.2d 1285, 1288 (10th Cir. 1989) ("that the power to execute judicial decrees is no less an important and integral part of the judicial process than the roles of those officials previously afforded absolute immunity")). The Court agrees with the magistrate judge that issuing a writ pursuant to a court's order bears an "integral relationship with the judicial process" and entitles Kloek to absolute immunity. *Coleman*, 90 F. App'x at 317.

Plaintiff's arguments to the contrary are unconvincing. Aside from arguing that Kloek is not a judge but a clerk of court under certain circumstances, which is correct although not dispositive given the Tenth Circuit's extending judicial immunity to clerks of court, plaintiff claims that Kloek "forged" the writ. Docket No. 89 at 5–6. To the extent this is a new claim or argument not raised previously, which it appears to be, as plaintiff does not bring a forgery claim in his complaint, *see generally* Docket No. 1, the Court declines to consider it. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."); *see also Maurer v. Idaho Dep't of Corr.*, 799 F. App'x 612, 614 n.1 (10th Cir. 2020) (unpublished). Moreover, plaintiff provides no support for his claim that Kloek forged the writ.

Plaintiff argues that the writ itself was "illegal" because the court and defendants

did not follow the proper procedure for the writ and FED process.  Docket No. 89 at 6–7.

Plaintiff previously raised these claims in his response to Kloek's motion to dismiss.

*See, e.g.*, Docket No. 59 at 1, 2, 4–9.  "A motion to reconsider should not be used to

revisit issues already addressed or advance arguments that could have been raised

earlier."  *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014).  This ground for

reconsideration is, therefore, rejected.

Next, plaintiff argues that the judge who issued the writ was removed from office

for violating plaintiff's constitutional rights.  Docket No. 89 at 7.  Plaintiff provides no

support for this argument and does not suggest a connection to Kloek related to the

supposed removal.[2]  The Court, therefore, overrules plaintiff's objections and accepts

the magistrate judge's recommendation regarding plaintiff's claims against Kloek.

**B.  Statute of Limitations**

The magistrate judge recommended dismissing plaintiff's claims as untimely.

Docket No. 86 at 9–11.  Plaintiff brings his claims under §§ 1983, 1985, and 1986.  *See*

*generally* Docket No. 1.  As the magistrate judge correctly noted, the statute of

limitations for §§ 1983 and 1985 actions is borrowed from state statutes.  Docket No. 86

at 9–10 (citing *Mondragón v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (holding

---

[2] Plaintiff also argues that the magistrate judge refused to allow plaintiff discovery
to "exam [sic] the [d]efendants under oath during oral deposition."  Docket No. 89 at
7–8.  Plaintiff, however, is objecting to the magistrate judge's recommendations, not
previous orders that do not appear to have been objected to.  Because plaintiff does not
identify the ruling that he finds objectionable or the provision of federal law that he
believes Judge Neureiter violated, the Court declines to consider this argument further.
*See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not
consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort
at developed argumentation."); *United States v. Hardman*, 297 F.3d 1116, 1131 (10th
Cir. 2002) ("Arguments raised in a perfunctory manner . . . are waived.").

that the statute of limitations of state tort law applies in § 1983 claims); *Crosswhite v. Brown*, 424 F.2d 495, 496 & n.2 (10th Cir. 1970) (same for § 1985 claims)).  Because neither §§ 1983 nor 1985 provide a statute-of-limitations period, the magistrate judge noted that, in Colorado, the relevant statute of limitations for those claims is two years. *Id.* (citing Colo. Rev. Stat. § 13-80-102(1)(g) ("The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, must be commenced within two years after the cause of action accrues, and not thereafter . . . [a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute.")); *see also Canfield v. Douglas Cnty.*, 619 F. App'x 774, 777 (10th Cir. 2015) ("In § 1983 actions we apply the forum state's statute of limitations for personal-injury claims. . . .  Colorado, the forum state here, provides a two-year statute of limitations for personal-injury claims.").  The magistrate judge also explained that the statute of limitations for claims brought under § 1986 is one year. Docket No. 86 at 10 (citing *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 142 (10th Cir. 2008)).

A federal cause of action, such as that alleged here, accrues "when the plaintiff has 'a complete and present cause of action.'"  *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citations omitted).  This occurs when "the plaintiff knows or has reason to know of the injury which is the basis of the action."  *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993).  "[T]he tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.  The cause of action accrues even though the full extent of the injury is not then known or predictable."  *Wallace*, 549 U.S. at 391 (citations omitted).  In other words, the statute of

12

limitations begins to run once "the plaintiff can file suit and obtain relief." *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 201 (1997).[3]

The magistrate judge found that plaintiff's claims accrued on January 30, 2017, when the allegedly unconstitutional writ was used to eject him.  Docket No. 86 at 10. However, because plaintiff did not file this lawsuit until January 2021, the magistrate judge determined plaintiffs claims were not timely.  *Id.*  The magistrate judge also discounted plaintiff's additional argument that the statute of limitations period was or should have been equitably tolled during his state-court litigation because neither §§ 1983 nor 1985 require pursuit, let alone exhaustion, of state remedies before filing a federal lawsuit.  *Id.*  Nor did the magistrate judge find equitable tolling appropriate in this case, because plaintiff raised the allegedly illegal writ in a state-court filing in January 2017, just 21 days after the writ issued and therefore was not impeded from filing a timely claim.  *Id.* at 11.  Thus, as the magistrate judge determined, there was no indication that plaintiff was unable to timely pursue relief due to circumstances beyond plaintiff's control.  *Id.* (citing *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 149 (Colo. 2007) (holding that equitable tolling may be appropriate where circumstances beyond the plaintiff's control make it impossible to timely file a claim despite diligent efforts)). The magistrate judge thus found "plaintiff's argument that [d]efendants somehow

---

[3] Plaintiff claims his cause of action arose when the Colorado Supreme Court denied his petition for certiorari on May 26, 2020.  Docket No. 89 at 10.  This contention is without merit because plaintiff provides no indication that a federal civil rights cause of action accrues when a state court exercises its discretion to act on a petition for certiorari.  Plaintiff's claims are not about his petition for certiorari, but rather pertain to the FED and foreclosure actions.

'concealed their secret illegal writ of ejection' is nonsensical" because, when the

Arapahoe District Court rejected plaintiff's challenge to the writ in January 2017, the

court referred plaintiff to the court's November 3, 2015 order regarding the writ on the

"already-granted order of possession." *Id.* (citation omitted).

In his objection, plaintiff claims that there is no statute of limitations for forgery.

Docket No. 89 at 9. Whether this is correct or not – plaintiff provides no authority for the

claim – is irrelevant, as plaintiff did not plead a forgery claim. Plaintiff also mentions

what he refers to as the "discovery exception rule," but does not explain what this rule is

or in what authority it may be found. *Id.* Moreover, because plaintiff did not raise this

theory below, it is waived. *Marshall*, 75 F.3d at 1426; *Maurer*, 799 F. App'x at 614 n.1.

Next, plaintiff argues that the magistrate judge required him to exhaust all

administrative remedies. Docket No. 89 at 10–11. There is no such indication in the

magistrate judge's recommendations. *See generally* Docket No. 86. In fact, the

magistrate judge stated the opposite. Docket No. 89 at 10 ("Sections 1983 and 1985

are separate and independent remedies from the claims [p]laintiff pursued in state court,

and there is no requirement that a litigant to pursue state judicial remedies to

completion prior to commencing an action under this section." (citing *Bd. of Regents of

Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 491 (1980)). Plaintiff's citations to the

contrary are not persuasive, as the Supreme Court has held that, generally, exhaustion

of state remedies is not a prerequisite to bringing an action under § 1983. *Patsy v. Bd.

of Regents*, 457 U.S. 496, 500 (1982) ("[W]e have on numerous occasions rejected the

argument that a § 1983 action should be dismissed where the plaintiff has not

exhausted state administrative remedies."); *Monroe v. Pape*, 365 U.S. 167, 183 (1961)

("The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."), *overruled on other grounds by Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005).

Plaintiff also mentions the "state-court[']s abuse of discretion," *see* Docket No. 89 at 11–12; however, it is not clear how plaintiff intends to connect his contention that the Arapahoe District Court judge abused his discretion in issuing the order, or that Kloek abused her discretion in issuing the writ, regarding the statute of limitations.  Because this argument is undeveloped, the Court does not consider it further.  *See Wooten*, 377 F.3d at 1145; *Hardman*, 297 F.3d at 1131.  The Court, however, notes that the allegedly improper order regarding the writ of restitution was issued November 3, 2015, and the writ was used to evict plaintiff on January 30, 2017.  Even if the Court assumes plaintiff's claims about the alleged abuse of discretion accrued on this late date, his claims would still be barred.  The Court therefore accepts the magistrate judge's recommendation that plaintiff's claims are barred by the statute of limitations and overrules plaintiff's objections.

### C.  Constitutional Claims Against Citibank

The magistrate judge found that plaintiff's § 1983 claims against Citibank should be dismissed because Citibank is not a state-actor.  Docket No. 86 at 11–13.  "To state a claim under [42 U.S.C.] § 1983 a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009) (citing *West v. Atkins*, 487 U.S. 42, 48

(1988)).  A defendant has acted under color of state law where the defendant has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *West*, 487 U.S. at 49 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981).  Generally, private parties are not state actors, as "private conduct that is not fairly attributable to the State is simply not actionable under § 1983, however discriminatory or wrongful the conduct is."  *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (citations and internal quotation marks omitted).  Where a private party conspires with state officials to deprive others of constitutional rights, however, the private party is acting under color of state law.  *See Tower v. Glover*, 467 U.S. 914, 920 (1984); *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

The magistrate judge found that Citibank was not a state actor because, although plaintiff argues that Citibank played the most important role in the allegedly illegal action by initiating the re-issuance of the writ, plaintiff has not shown that Citibank was a "willful participant in a joint activity with the State or its agents."  Docket No. 86 at 12 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).  Moreover, the magistrate noted, the Tenth Circuit has held that banks are generally not state actors.  *Id.* at 12–13 (citing *Silva*, 294 F. Supp. 3d at 1131 ("The Tenth Circuit has held that banks generally do not operate under color of state law, and therefore, cannot be held liable pursuant to § 1983."); *Ramsey v. Citibank, N.A.*, No. 10-cv-02653-WYD-CBS, 2011 WL 4485922, at *9–10 (D. Colo. July 28, 2011), *report and recommendation adopted*, 2011 WL 4485918 (D. Colo. Sept. 28, 2011), *aff'd*, 475 F. App'x 711 (10th Cir. 2012) (unpublished) (finding that plaintiff's challenge to merits of defendant banks' eviction efforts was insufficient to

16

transform banks into state actors)).  The magistrate judge also noted that "[e]ven the alleged 'private misuse' of state laws cannot form the basis of a § 1983 claim against a private entity."  *Id.* (citing *Lewis v. JP Morgan Chase Bank, Nat'l Assoc.*, No. 13-cv-01375-PAB-KLM, 2014 WL 1217948, at *2 (D. Colo. Mar. 24, 2014) ("A private party invoking a state legal procedure does not transform itself into a state actor."), *aff'd*, 606 F. App'x 896 (10th Cir. 2015)).

Plaintiff raises a number of objections.  First, plaintiff claims that the magistrate judge "has a hidden agenda" and "ignores material evidence in the record."  Docket No. 89 at 13.  Plaintiff then discusses a previous summary judgment motion.  *Id.*  To the extent these are objections to the recommendation, they are not specific because they do not enable the Court to focus its "attention on the factual and legal issues that are truly in dispute."  *See 2121 E. 30th St.*, 73 F.3d at 1059–61.  Finding no clear error, the Court accepts the magistrate judge's recommendation and overrules plaintiff's objection.

Second, plaintiff claims that it is "irrefutable that Citi[bank] engaged in motions practice in violation of Colorado law while their [sic] subject FED action was on appeal."  Docket No. 89 at 13.[4]  Plaintiff claims that this violates Colorado law.  *Id.*  He cites Colo.

---

[4] In another of plaintiff's cases, former Magistrate Judge Michael J. Watanabe recounted that

> [i]n 2012, Citibank . . . initiated foreclosure proceedings . . . and the property was sold by the Arapahoe County Public Trustee.  Plaintiff continued to reside on the property and in 2014, Citibank brought an FED action . . . against [p]laintiff, which eventually resulted in judgment for possession being entered in favor of Citibank. . . .  Plaintiff appealed the FED judgment.  While the case was on appeal, Citibank sought and was granted a Writ of Restitution.  The Colorado Court of Appeals affirmed the

Rev. Stat. § 13-40-117(2), which states, in relevant part, that if a party "feels aggrieved" by a judgment in a FED action, the party may appeal and, "[u]pon the court's taking such appeal, all further proceedings in the case shall be stayed."  Plaintiff's argument fails for multiple reasons.  First, plaintiff does not identify the specific motions that he believes Citibank filed or that the court acted on improperly during the pendency of his many appeals.  Rather, he states that "Citi[bank] submitted a secret and concealed motion to a state-lower court without jurisdiction or authority."  Docket No. 89 at 14.

Second, the statute that plaintiff relies upon only concerns matters appealed from county court to district court.  *See* Colo. Rev. Stat. § 13-40-117(1) ("If either party feels aggrieved by the judgment rendered in such action before the *county court*, he may appeal to the *district court*, as in other cases tried before the county court, with the additional requirements provided in this article.") (emphasis added).  Plaintiff, however, initiated his action in district court and then appealed to the Colorado Court of Appeals.  Plaintiff provides no authority that Colo. Rev. Stat. § 13-40-117 applies in such instances, which would be contrary to the language of the statute.

Third, plaintiff has not explained why federal court is the proper place to address an alleged violation of a stay in a state-court lawsuit from 2015.  Plaintiff simply reiterates this argument asserted previously, *see* Docket No. 59 at 11–12, which is not the purpose of objections to a recommendation.  *See Christy*, 739 F.3d at 539.

---

district court's judgment on October 15, 2015.

*McDonald v. Arapahoe Cnty.*, 17-cv-01701-CMA-MJW, 2018 WL 571876, at *1 (D. Colo. Jan. 26, 2018), *report and recommendation adopted*, 2018 WL 1008271 (D. Colo. Feb. 22, 2018), *aff'd*, 755 F. App'x 786 (10th Cir. 2018) (unpublished).

Plaintiff also claims that Kloek exceeded her authority under Colo. Rev. Stat. § 13-6-212(2)(a).  Docket No. 89 at 14.  This argument is without merit, as that statute explicitly provides that a clerk of court may "[i]ssue bench warrants, misdemeanor or felony warrants, and *writs of restitution upon written or oral order of a judge*," *see* Colo. Rev. Stat. § 13-6-212(2)(a) (emphasis added), which is what Kloek did in this case. Plaintiff's remaining arguments, namely, that Citbank "sought significant assistance from state/county official, Kleok [sic] to accept their illegal and unlawful motion" and that Citibank and Kloek acted jointly and overtly to "conspire[] to conceal Citi[bank]'s secret writ violating the [p]laintiff's rights secured under Constitution for due process and equal protection[] under law" are devoid of factual support and development, and the Court declines to consider them further.  *See* Docket No. 95 at 16.  Although plaintiff objects to Citibank's foreclosure and FED actions, the magistrate judge correctly noted that "[m]erely instituting a routine civil suit does not transform a litigant's actions into those taken under color of state law."  Docket No. 86 at 13 (quoting *Hirsch v. Copenhaver*, 839 F. Supp. 1524, 1531 (D. Wyo. 1993)).  The Court will therefore accept the magistrate judge's recommendation and overrule plaintiff's objections.

### D.  The *Rooker-Feldman* Doctrine

The magistrate judge found that the *Rooker-Feldman* doctrine bars plaintiff's claims.  *Id.* at 13–15.  The *Rooker-Feldman* doctrine prevents "state-court losers" from seeking a review and rejection of a state-court judgment "rendered before the district court proceedings commenced."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Miller v. Deutsche Bank Nat'l Trust Co. (In re Miller)*, 666 F.3d 1255, 1261 (10th Cir. 2012).  "*Rooker-Feldman* precludes federal district courts from

19

effectively exercising appellate jurisdiction over claims 'actually decided by a state court' and claims 'inextricably intertwined' with a prior state-court judgment."  *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006) (citations omitted). *Rooker-Feldman* applies only if the state court has made a final determination of the rights of the parties before the federal action is initiated.  *Mann v. Boatright*, 477 F.3d 1140, 1146 (10th Cir. 2007).

Applying the *Rooker-Feldman* doctrine requires considering "whether the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress."  *Mo's Express*, 441 F.3d at 1237 (emphasis and citation omitted).  The "operative question is whether the injury alleged by the [p]laintiffs resulted from the state-court judgment itself."  *Preston v. Citimortgage, Inc.*, 2015 WL 258447, at *2 (W.D. Okla. Jan. 20, 2015).  "In other words, an element of the claim must be that the state court wrongfully entered its judgment."  *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012).  If the "relief sought in the federal action would . . . undo the relief granted by the state court," then the federal lawsuit is barred by *Rooker-Feldman*.  *Mo's Express*, 441 F.3d at 1237; *see also Mayotte v. U.S. Bank Nat'l Ass'n*, 880 F.3d 1169, 1174 (10th Cir. 2018) ("What is prohibited under *Rooker-Feldman* is a federal action that tries to modify or set aside a state-court judgment because the state proceedings should not have led to that judgment.").

The magistrate judge noted that the "crux of [p]laintiff's lawsuit is that[,] 'because Citibank's FED action [was] on appeal, Citibank's secret and concealed motion for Forcible Ejection was an unlawful act and an act without jurisdiction.  Thus, Kloek personally and Citibank lie responsibility [sic] for McDonald's damages.'"  Docket No. 86

20

at 14–15 (quoting Docket No. 1 at 12, ¶ 41).  As the magistrate judge explained, Judge

Watanabe addressed this issue in 2018 and concluded that the *Rooker-Feldman*

doctrine barred plaintiff's claims because:

> Plaintiff's appeal of the state court's FED judgment was dismissed by the
> Colorado Court of Appeals, and the Colorado Supreme Court denied
> Plaintiff's Petition for Writ of Certiorari.  These forums provided [p]laintiff
> adequate opportunity to argue whether or not the state court could issue
> the Writs of Restitution while the FED judgment was appealed, which is
> "inextricably intertwined" with the underlying FED action.  Indeed, [p]laintiff
> expressly argued to the Colorado Supreme Court that his rights were
> violated when the state court "invited, accepted and granted writ while it
> was without jurisdiction."  Neither state appellate court agreed with
> [p]laintiff.  For this Court to determine otherwise would plainly invalidate
> the state law findings, orders, and judgment.

*Id.* at 15 (quoting *McDonald*, 2018 WL 571876, at *4).  Judge Christine M. Arguello

accepted Judge Watanabe's recommendation, *see McDonald*, 2018 WL 1008271, at

*4–5, and the Tenth Circuit affirmed.  *See* 755 F. App'x 786, 788–90.

Plaintiff first reiterates his forgery and illegal conveyance arguments.  *See* Docket

No. 89 at 20 (citing 26 U.S.C. §§ 860G(a)(3)(A)(i), 860G(a)(3)(A)(ii), 860D(a)(4)).

However, these cites are to the definitions of "qualified mortgage" and "real estate

mortgage investment conduit."  These arguments are not relevant to the *Rooker-*

*Feldman* analysis, and the Court does not consider them.  Plaintiff next claims that the

issue in this case is the constitutionality of "Colorado's Rule 120."  *Id.* at 20–21.  Plaintiff

appears to refer to Colorado Rule of Civil Procedure 120, which concerns orders

authorizing foreclosure sales in a deed of trust to the public trustee.  Colo. R. Civ. P.

120.  However, plaintiff makes no Rule 120 arguments in his complaint.  *See generally*

Docket No. 1.  It appears that the first time plaintiff raised a Rule 120 argument in this

case is in his responses to defendants' motions to dismiss.  *See* Docket Nos. 57, 59.   A

plaintiff, however, may not amend his complaint in a response to a defendant's motion to dismiss.  *See Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) (citing *Jojola*, 55 F.3d at 494); *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  Therefore, the Court finds that this argument is not properly before the Court.

Finally, plaintiff claims that the "state-court refused to uphold and enforce the cited federal law above" and that "*Rooker-Feldman* has no hold on this case" because "[t]he cited federal laws above were never adjudicated in either state-court or federal-court."  Docket No. 89 at 21.  Not one of plaintiff's claims was brought under the federal laws that plaintiff lists, and he may not raise new arguments in his objections.

The Court also agrees with the magistrate judge, and the numerous other courts that have considered plaintiff's arguments over the years, that the *Rooker-Feldman* doctrine bars plaintiff's claims.  The thrust of plaintiff's many lawsuits is that Citibank (and others) have used the eviction and FED processes improperly or unlawfully.  In this lawsuit, plaintiff's angle is to attack the writ of restitution and Citibank's litigation during the pendency of his state-court appeal.  Still, plaintiff ultimately wishes to undue the state-court rulings against him, which he argues were unconstitutional.  This is precisely what the *Rooker-Feldman* doctrine prohibits.  *See Mo's Express*, 441 F.3d at 1233 (holding that the *Rooker-Feldman* doctrine bars federal courts from "effectively exercising appellate jurisdiction over claims 'actually decided by a state court' and claims 'inextricably intertwined' with a prior state-court judgment"); *Mayotte*, 880 F.3d 1174 ("What is prohibited under *Rooker-Feldman* is a federal action that tries to modify or set aside a state-court judgment because the state proceedings should not have led

22

to that judgment.").  Plaintiff's citation to *Mayotte*, which he claims courts in this district have a habit of ignoring, does not lead to a different result.  In *Mayotte*, the court held that the plaintiff's claims should not have been dismissed under *Rooker-Feldman* because her claims could be proven "without any reference to her state-court proceedings."  880 F.3d at 1176.  The same is not true of plaintiff's claims, which are that Kloek and Citibank acted improperly during plaintiff's state-court litigation.  The Court therefore accepts the magistrate judge's recommendation and overrules plaintiff's objections.[5]

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Response and Objection to the Court's Order Dated 8-24-2021 [Docket No. 95], which the Court construes as a motion for reconsideration, is **DENIED**.  It is further

**ORDERED** that Plaintiff's Motion to Exceed Arbitrary Page Limitation [Docket No. 96] is **GRANTED**.

DATED December 2, 2021.

BY THE COURT:

/s/ Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge

---

[5] Because the Court finds dismissal of plaintiff's claims is appropriate, the Court does not address plaintiff's damages arguments.  *See* Docket No. 89 at 17–20.